UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOSEPH ARUANNO,** <br><br> **Plaintiff,** <br><br> v. <br><br> **MICHAEL J. ASTRUE,** <br> *Commissioner of Social Security*, <br><br> **Defendant.** | 11-CV-2521 <br><br><br> OPINION |

This matter comes before the Court on Defendant Commissioner of Social Security Michael J. Astrue's ("Commissioner") motion to dismiss Plaintiff Joseph Aruanno's ("Mr. Aruanno") Social Security benefits Complaint for lack of subject matter jurisdiction. For the reasons stated below, this Court will grant the motion and dismiss the Complaint.

## I.   Factual and Procedural Background

Mr. Aruanno is a twice-convicted sex offender: in 1994, he exposed himself to two girls in Florida, and in 1996, he sexually molested an eight-year-old girl playing in front of her house in New Jersey. *Aruanno v. Hayman*, 384 Fed. App'x 144, 145 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 835 (U.S. 2010). In New Jersey, Mr. Aruanno was convicted of second-degree sexual assault and sentenced to ten years in prison. *Id.* at 145. In 2004, before Mr. Aruanno's prison term ended, the State of New Jersey involuntarily committed him pursuant to the New Jersey Sexually Violent Predator Act ("SVPA"), N.J.S.A. § 30:4-27.24 *et seq.*, 384 Fed. App'x at 145, and placed him in civil detention at a "Special Treatment Unit," where he currently resides. (Compl. 3, Apr. 28, 2011, ECF No. 1.)

Prior to his second conviction, on July 19, 1995, an administrative law judge ("ALJ") awarded Mr. Aruanno Social Security disability insurance ("SSDI") benefits with an entitlement date of November 1993. (Infiesta Decl. ¶ 1, Sept. 6, 2011, ECF No. 12-3.) The Social Security Administration ("SSA") received notice that Mr. Aruanno was incarcerated as of December 23, 1996 from the Department

of Law Enforcement in Tallahassee, Florida. (Decl. ¶ 2., ECF No. 12-3.) The SSA subsequently received reports that Mr. Aruanno was incarcerated in various New Jersey facilities beginning April 7, 1997. (Decl. ¶ 2., ECF No. 12-3.) As a result of the incarceration report, the SSA suspended Mr. Aruanno's SSDI benefits with an effective date of December 1996. (Decl. ¶ 3., ECF No. 12-3.)

Throughout 2004, Mr. Aruanno contacted SSA seeking to restore the SSDI benefits he had received prior to his incarceration in 1996. (Compl. 5, ECF No. 1.) In at least five letters responding to Mr. Aruanno's requests, SSA stated that SSDI and Supplemental Security Income ("SSI") benefits are not payable to individuals who are incarcerated or who are confined "in an institution at public expense" immediately upon completion of a prison sentence for a sexual criminal offense on the basis of a court finding that the individual is a "sexually dangerous person or sexual predator." The SSA also informed Mr. Aruanno that SSI benefits are generally not available for any month to someone who resides in a public institution for the entire month. *See* (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss Exs. A-E, ECF No. 13.)

Several years later, on Nov. 16, 2007, Mr. Aruanno wrote to the Commissioner demanding restoration of his benefits. (Compl. 5, ECF No. 1.); (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss Ex. F, ECF No. 13.) Mr. Aruanno also retained Legal Services of New Jersey in 2008 to help facilitate his claim, but to no avail. (Compl. 5, ECF No. 1); (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss Exs. G-H, ECF No. 13) (letters from Legal Services complaining of a lack of response from SSA in obtaining Mr. Aruanno's file). Waiting several more years and receiving no response from the Commissioner, Mr. Aruanno filed the present action pro se. (Compl. 5, ECF No. 1.)

Mr. Aruanno seeks restoration of the SSDI benefits he received prior to his incarceration in 1996. (Compl. 6, ECF No. 1.) Mr. Aruanno claims that he is entitled to benefits in part, due to alleged misconduct on the part of the Special Treatment Unit in which he is held:

> And though the rules insinuate that hospitalized persons are not eligible to collect my situation varies because I am in a situation where the facility refuses to provide and care, such as soap and other personal hygienic items; clothes; food if I am going to eat adequate amounts of healthy nutritional food; legal expenses; certain medical expenses; etc . . . .

(Compl. 5, ECF No. 1.)

Alternatively, Mr. Aruanno alleges he is owed approximately $50 per month that "comes from S.S." (Compl. 5, ECF No. 1.) Mr. Aruanno fails to cite a particular SSA program for the "personal needs allowance" he seeks, but he almost

certainly means SSI.  (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss 4, ECF No. 13.); *see* 42 U.S.C. § 1383(a)(2)(F)(ii)(II)(bb) (referring to "personal needs assistance" under Title XVI of the Social Security Act, Supplemental Security Income).  Mr. Aruanno also states in the "Relief" section of his Complaint that he is seeking benefits under "SSI or SSD."  (Compl. 6, ECF No. 1.)

Mr. Aruanno seeks an order forcing the Commissioner to resume payment of SSDI benefits retroactive to 2004, or alternatively, forcing the Commissioner to pay Mr. Aruanno a personal needs allowance of approximately $50 per month.  (Compl. 6, ECF No. 1) ("[I] ask that S.S. be ordered to comply which would be Declaratory and Injuctive [sic] relief").  The Commissioner seeks dismissal of Mr. Aruanno's Complaint for lack of subject matter jurisdiction.  (Def.'s Br. in Supp. of Mot. to Dismiss 1, ECF No. 12-1.)

## II.    Legal Analysis

### A. Motion to Dismiss Standard

Federal courts have an independent responsibility to consider whether they have subject matter jurisdiction *sua sponte*.  *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 217 (3d Cir. 1999); *see* Fed. R. Civ. P. 12(b)(1).  If a federal court finds it lacks subject matter jurisdiction, it must dismiss the action.  Fed. R. Civ. P. 12(h)(3).

When a court determines whether it has subject matter jurisdiction, "the court may consider matters outside the pleadings such as affidavits and other material properly before the court."  *Kelley v. Edison Twp.*, No. 03-4817(WHW), 2006 WL 1084217, at *5 (D.N.J. Apr. 25, 2006) (citing *Anjelino v. New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999)).  Furthermore, "'documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered.'"  *Thomas v. Nova Southeastern University, Inc.*, No. 11–2089, 2011 WL 3205298, at *2 (D.N.J. July 27, 2011) (quoting *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)).

Finally, in the case of pro se filers, courts construe complaints liberally.  *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)).  Similarly, "'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

B. Subject Matter Jurisdiction Under 42 U.S.C. § 405

Congress made § 405(g) the exclusive means of judicial challenge to SSDI benefits decisions of the Commissioner.[1]  42 U.S.C. § 405(h) ("No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided"); *see Palmer v. Barnhart*, 89 Fed. App'x 806, 809 (3d Cir. 2004) ("The Supreme Court has held that § 405(h) precludes federal-question jurisdiction regardless of how well a plaintiff characterizes his claims") (citing *Heckler v. Ringer*, 466 U.S. 602, 614 (1984)).  Subject matter jurisdiction for SSI challenges in federal court also follows § 405(g).  42 U.S.C. § 1383(c)(1)(B)(ii)(3) ("The final determination of the Commissioner . . . shall be subject to judicial review as provided in section 405(g) . . . ").  In order to challenge a decision of the Commissioner in federal court, the plaintiff must have obtained the Commissioner's "final decision." 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days . . . ").  Congress vests authority for determining the procedures for reaching a final decision with the Commissioner.  42 U.S.C. § 405(a); *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975) ("The term 'final decision' is not only left undefined by the Act, but its meaning is left to the [Commissioner] to flesh out by regulation").

The Commissioner, through regulation, defines "final decision" in terms of the completion of an administrative review process.  20 C.F.R. § 404.900(a)(5).  To successfully complete the administrative review process, a Social Security benefits applicant must make timely appeals through administrative procedure governed by 20 C.F.R. § 404.900, *et seq.*[2]  A final decision for purposes of § 405,

---

[1] Mr. Arruano's Complaint alleges that the Commissioner is unlawfully denying him SSDI and SSI benefits in violation of his rights under the Social Security Act, but incorrectly asserts subject matter jurisdiction under 42 U.S.C. § 1983. (Compl. 2, ECF No. 1.) As the analysis below will demonstrate, subject matter jurisdiction for federal court actions seeking SSDI and SSI benefits must be determined in accordance with 42 U.S.C. § 405(g). However, although Mr. Aruanno asserts improper jurisdiction, a liberal construction of his Complaint in light of the circumstances of the filing should forgive failure to assert jurisdiction under § 405(g). The standard complaint form that Mr. Aruanno used to file this action gave him the option of ticking a line for "jurisdiction" next to either "42 U.S.C. § 1983," which the form stated was for "state prisoners," or "*Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and 28 U.S.C. Z [sic] 1331" for "federal prisoners." (Compl. 2, ECF No. 1.) Mr. Aruanno unsurprisingly selected § 1983, since he was civilly committed by New Jersey, not the United States. (Compl. 5, ECF No. 1.) The form does not contain a line for § 405 or Social Security-related complaints, and Mr. Aruanno wrote only "civilly committed persons," on the blank line provided. (Compl. 2, ECF No. 1.) Plainly, Mr. Aruanno failed to assert the appropriate jurisdiction for his claims under § 405, but a liberal construction of Mr. Aruanno's Complaint necessitates reading it *as if* jurisdiction was properly asserted under 42 U.S.C. § 405.

[2] The procedure begins with an "initial determination" by the SSA, generally regarding the granting, suspension, or reduction of benefits. 20 C.F.R. § 404.902 (describing administrative actions that constitute "initial determinations," including denial of continuance of benefits). The applicant may challenge an initial determination by filing a timely

and subsequent federal subject matter jurisdiction, may only be obtained at the conclusion of the administrative appeals process, unless an exception applies. 20 C.F.R. § 404.900(a)(5); *see, e.g. Fitzgerald v. Apfel*, 148 F.3d 232, 234 (3d Cir. 1998). As such, an applicant's failure to follow SSA procedures in filing timely appeals of SSA decisions will foreclose that applicant from obtaining jurisdiction for a federal district court to hear his complaint. *See Bacon v. Sullivan*, 969 F.2d 1517, 1520-1521 (3d Cir. 1992) ("We join the majority view that Appeals Council decisions not to review untimely appeals are not 'final decisions,' and hence are not subject to judicial review"). In sum, the SSA administrative process acts as a federal jurisdictional bar for overly-eager plaintiffs to enter the federal court house; plaintiffs must exhaust the administrative remedy before seeking relief in federal court.

Mr. Aruanno does not allege that the Commissioner, through the Appeals Council, has issued a final decision, as required for federal jurisdiction under § 405(g), and there is nothing in the record to suggest that Mr. Aruanno challenged SSA's denial of benefits or the assertion that he was detained as a "sexually dangerous person" or "sexual predator." Mr. Aruanno made no appeal, and therefore failed to exhaust his administrative remedies with the SSA. As such, the waiver exception to § 405(g) does not apply.

### C. Exceptions to 42 U.S.C. § 405 Jurisdiction

There are two exceptions to § 405(g) jurisdiction: first, the Commissioner may waive the exhaustion requirement, *Salfi*, 422 U.S. at 763-64; second, the court may find that the plaintiff has stated a collateral claim and will face irreparable injury if the administrative process is followed. *Matthews v. Eldridge*, 424 U.S. 319, 330-32 & n.11 (1976) ("[T]he core principle that statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered remains applicable"). Here, Mr. Aruanno does not claim that the Commissioner has waived the finality requirement, and the Commissioner's brief emphatically states the opposite. (Def.'s Br. in Supp. of Mot. to Dismiss 1, ECF No. 12-1.) As such, this Court lacks subject matter jurisdiction under the waiver exception to § 405(g).

When determining whether a claim is collateral, courts focus on constitutional claims, *see Califano v. Sanders*, 430 U.S. 99, 109 (1977); *Pallotta v.*

---

appeal to the SSA for "reconsideration." 20 C.F.R. § 404.907. If the applicant is not satisfied after reconsideration, he may make a timely appeal for a hearing before an administrative law judge ("ALJ"). 20 C.F.R. § 404.929. If the applicant remains unsatisfied by the ALJ's decision, he may then make another timely appeal to an administrative Appeals Council. 20 C.F.R. § 404.967. Decisions of the Appeals Panel are considered "final decisions" under § 405(g), and may be appealed to the appropriate federal district court. 20 C.F.R. § 404.981.

5

*Barnhart*, 144 Fed. App'x 938, 941 (3d Cir. 2005); *Mathews v. Diaz*, 426 U.S. 67, 76 (1976) (finding that constitutional issues are beyond the Commissioner's competence to interpret the Social Security Act), and claims alleging improper SSA system-wide policies. *See Bailey v. Sullivan*, 885 F.2d 52, 65 (3d Cir. 1989) ("[C]laims of systemwide misapplication or invalidity are collateral to the claims for individual benefits"); *Liberty Alliance of the Blind v. Califano*, 568 F.2d 333, 344 (3d Cir. 1977). Also, "[a] claim is collateral if it is not essentially a claim for benefits." *Fitzgerald*, 148 F.3d at 234 (citing *Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir. 1993)).

In *Fitzgerald*, the Third Circuit found no *Eldridge* exception where the plaintiff's purported collateral claim was inseparable on the merits from her benefits claim, and where the plaintiff sought only benefits as relief. *Id.* at 235. For determining irreparable harm, courts consider whether the plaintiff will suffer severe economic harm, serious medical deterioration, or psychological stress, *see Pallotta*, 144 Fed. App'x at 941; *accord Bailey*, 885 F.2d at 65 (stating irreparable harm may occur where plaintiffs have few resources other than Social Security benefits and suffer from severe mental or physical conditions), but are less likely to find irreparable harm when plaintiff pursued his claim for years without the payment of benefits. *Pallotta*, 144 Fed. App'x at 941 (holding that a plaintiff who asserts a colorable due process claim but fails to assert irreparable harm is not entitled to an exception to the exhaustion of administrative remedies).

Here, Mr. Aruanno fails to present a collateral claim or allege irreparable harm. Mr. Aruanno makes no constitutional claim and alleges no overarching invalid SSA policy. Although Mr. Aruanno cloaks his demand for payment in the language of "Declaratory and Injuctive [sic] relief," (Compl. 6, ECF No. 1), his suggested remedy would *only* require the Commissioner to pay him retroactive benefits.[3] As in *Fitzgerald*, the merits of Mr. Aruanno's claim may not be separated from a claim for benefits; no collateral claim has been stated. Mr. Aruanno states that SSA's denial of benefits causes him "serious irreversible harm," (Compl. 6, ECF No. 1.), but urges this Court to apply any benefits found to be owed to him "retroactive as of 2004 when I first applied." (Compl. 5, ECF No. 1.) It is unclear why a present denial of benefits would harm Mr. Aruanno "in a way that cannot be remedied by the later payment of benefits," *Ringer*, 466 U.S. at 618, when Mr. Aruanno's *sole* requested remedy here is the later payment of benefits. Furthermore, Mr. Aruanno makes no excuse for waiting until 2011 to file

---

[3] Mr. Aruanno suggests that "injunctive and declaratory relief … would include a *more formal* denial of benefits" from SSA, but the SSA correspondence Mr. Aruanno himself submitted as exhibits displays a clear and unambiguous statement of denial from the SSA. (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss 4 & Exs. A-E, ECF No. 13) (emphasis added). It is unclear how Mr. Aruanno could have been harmed by the alleged informality of the SSA letters other than through a denial of benefits.

6

a claim that has its basis in a 2004 SSA decision; if Mr. Aruanno faced irreparable harm in 2004, one would expect from him greater urgency than filing an action seven years later. Any harm Mr. Aruanno faces as a result of not receiving SSDI or SSI benefits to which he may be entitled may be cured by later payment.[4]

Even under this Court's liberal construction, Mr. Aruanno's Complaint fails to state any legally cogent reason for refraining from adherence to the normal requirement of exhaustion of administrative remedy under § 405(g). As such, this Court is without subject matter jurisdiction in this action.

### III. Conclusion

For the reasons stated above, the Court will dismiss the Complaint for lack of subject matter jurisdiction.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

---

[4] In addition to failing the substantive requirements of *Eldridge*, Mr. Aruanno's claims fail to satisfy policy considerations underlying the exhaustion exception for § 405(g). As the Supreme Court stated in *Salfi*, "[e]xhaustion is generally required as a matter of preventing premature interference with agency processes," adding that the agency should have "an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise." *Salfi*, 422 at 765 (citations omitted). Here, if Mr. Aruanno thought he could demonstrate that the SSA had erroneously denied him benefits, he could have appealed through the administrative process. If SSA had been in error, it could have corrected itself, since Mr. Aruanno surely would have brought any mistake to SSA's attention. However, Mr. Aruanno did not pursue his claim with SSA, thereby preventing the agency from correcting any potential errors and thwarting the policy goals of the exhaustion exception to § 405(g). *See also Bowen v. City of New York*, 476 U.S. 467, 484-85 (1986).